MOISE, Justice.
This case is a sequel to the case of Lama v. Manale, 212 La. 1007,.34 So.2d 55, wherein we affirmed a judgment of the Civil District Court for the Parish of Orleans, ordering the eviction of the defendant lessees from premises owned by the plaintiff lessors.
The record discloses that the lease' terminated on August 31, 1946 and that plaintiffs sued for possession of the premises, obtaining a judgment of eviction on October 2, 1946, in the Civil District Court. Only Manale appealed this judgment— to the Court of Appeals for the Parish of Orleans, where the suit was dismissed on jurisdictional grounds; a rehearing was granted, and thereafter the case was transferred to this court. We affirmed the judgment appealed on January 12, 1948, and denied a rehearing. Manale finally vacated the premises on February 25, 1948.
In the instant case the plaintiffs demand the amount of $17,261.76, representing liquidated damages (five times the actual rent for the 543-day period, September 1, 1946 through February 25, 1948) totalling $15,620.42, attorneys’ fees of ten per cent (10%) thereon, or $1,562.04, and court costs in the previous eviction suit, of $79.30. Their claim is predicated upon the following provision for liquidated damages contained in the lease contract between the Lamas and their lessees: “At the expiration of this lease or its termination for other causes, Lessee is to immediately surrender possession by actual delivery of all keys at Lessor’s place of business, the premises to be left broom clean and all trash removed, and should Lessee fail to sur *516 render possession he consents to pay as liquidated damages five times the rent per day for every day of his failure to do so, with attorney’s fees, costs, etc.”
The judge a quo refused to enforce this provision, assigning as his reason that it was “unconscionable, and so harsh that I do not feel that sitting as a Judge in a Court of equity I can enforce it”; and he gave judgment for the amount of rent which would have actually been due, had the lease still been in existence during the 543-day period, plus 10% attorney’s fees, and the court costs of the eviction suit.
The substance of Manale’s defense is that he did not know the existence of the clause in question, that it had not been the intention of the parties that the liquidated damage clause should be enforced as now sought, and that he remained in possession of the premises because he considered that he had exercised his right to renew the lease by a verbal agreement with the lessors. The defense of a renewal of the lease verbally was pleaded unsuccessfully in the eviction suit.
Where there is a clause in a contract, and that clause is the agreement of the parties, the defense of a lack of knowledge of its existence is untenable. Courts are not created to relieve men of their bad bargains made. Where a clause of a contract is clear and 'unambiguous, “the letter of it should not be disregarded, under the pretext of pursuing the spirit.”
As to the defense of variation of the wording with the true intent of the parties, the general rule of law is that the intent must be gathered from the language of the instrument itself, and the contract should be enforced unless such enforcement would lead to absurd consequences, R.C.C. art. 1945, par. 3.
The contract in specific terms shows how the renewal was to be made; it provided for the giving of a notice to the lessor in writing not later than sixty days prior to the expiration date of the lease. This was not done. Furthermore, the lessee was formally notified three weeks before the lease was due to expire that the lessors wanted possession of the premises, which by the terms of the lease he obligated himself to deliver to them. Defendant has admitted that no fraud was practiced upon him.
The plaintiffs plead Article 21, Revised Civil Code, which provides that equity cannot be invoked except “where positive law is silent." They then point to the positive law on the subject, Article 1934, Revised Civil Code, reading in part as follows:
“Where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
* * * * * *
*518 . “'Where the -parties, by their contract, have determined the sum that shall be paid as damages for its breach, the creditor must recover that sum, but is not entitled to more. But when the contract is executed in part, the damages agreed on by the parties may be reduced to the loss really suffered, and the gain of which the party has been deprived, unless there has been an express agreement that the sum fixed by the contract shall be paid, even on a partial breach of the agreement.”
It is a fixed rule of law that where the parties have the capacity to stipulate for liquidated damages, and when agreed upon, courts will not enquire whether the actual damage suffered equaled or approximated the agreed amount. Flanders v. Motor Sales & Service, Inc., 9 La.App. 616, 118 So. 397; Federal Sign System (Electric) v. Leopold, 10 La.App. 709, 120 So. 898; Claude Neon Federal Co. v. Four Hundred Club, 16 La.App. 651, 134 So. 445; Schramm v. Toye Bros. Yellow Cab Company, La.App., 169 So. 116. In the last named case the liquidated damages clause was identical with the one which plaintiff is now asking this court to enforce. While the number of days by which the lessee in the Schramm case overstayed his lease was trifling, compared to the number in the instant case, the principle is the same. We have no alternative but to affirm the agreement between the parties, and render judgment in the full amount of $15,640.42 against the lessee.
There is no law in prohibition of such a penalty provision in a contract. There has been no error, fraud or mistake, that would militate against our enforcing the covenants into which the cpntractants freely entered. It is more important that a rule of law should be settled than that it should be theoretically correct; for the usury of self-respect requires a stability of the jurisprudence. The Civil Code is the ocean “towards which all rivers of decision must run and from which the island of thought receives ■ its dew and rain.” In this case our Code has spoken; this Court must obey.
The prayer of the plaintiffs includes ten per cent attorneys’ fees on the amount awarded; but a careful reading of the lease contract fails to disclose that such percentage was stipulated in connection with liquidated damages, but only for the collection of rent notes due. It has not been denied that the defendant during his occupancy of the premises beyond the termination of the lease did tender rental payments to the lessors, and that they were refused; and since no proof was made of the actual value of the attorneys’ services in the instant suit, we will disallow them.
For the reasons assigned, the judgment of the district court is reversed, annulled and set aside, and there is judgment in favour of plaintiffs and against defendant in the full amount of $15,620.42, plus legal interest from date of judicial demand, to *520 gether with court costs of the eviction proceeding, amounting to $79.30, and together with all costs of court in the proceedings herein.
HAWTHORNE, J., takes no part.