Patricia C. MILLER, Plaintiff,

v.

LANCER POOLS CORP. and/or Lancer Industries, Inc., Defendant.

Civ. A. No. 2342.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

July 26, 1962.

Joseph F. Keogh, of Seale, Hayes, Smith, Keogh & Franklin, Baton Rouge, La., for plaintiff.

Franz Joseph Baddock, Baton Rouge, La., for defendant.

WEST, District Judge.

Complainant, Patricia C. Miller, d/b/a Apex Realty Company, seeks to recover damages for alleged breach of contract from respondents, Lancer Pools Corporation and Lancer Industries, Inc. She contends that she entered into a contract with respondents which made her an "exclusive dealer" for Lancer Lifetime Swimming Pools in the "Baton Rouge, Louisiana, area". She further contends that respondents, contrary to the terms of her contract, issued other "exclusive franchises" to other persons for the sale of these swimming pools in the same area, thus violating the "exclusive" provisions of her contract. She alleges that she paid the sum of $600 for the franchise, which she seeks to recover; that she paid $688.75 for a swimming pool to be installed on her premises, which swimming pool she claims never to have received, and which sum she seeks to recover; that she suffered a loss of profits in her business in the amount of $9,560 as a result of the defendant's breach of contract, which amount she seeks to recover; and that she has employed an attorney to prosecute this suit at a cost of $1,500, which sum she also seeks to recover. The case was tried to the Court, without a jury.

## FINDINGS OF FACT

1. On August 11, 1958, complainant entered into a written franchise agreement with Lancer Pools Corporation. The pertinent portions of this agreement, insofar as the disposition of this case is concerned, are as follows:

"Whereas, the second party is desirous of securing from the first party the right to the use of 'Lancer Lifetime Swimming Pools' in connection with the sale of such merchandise in the premises of the second party as aforementioned and in the exclusive territory as hereinafter mentioned and * * *.

"Whereas, it is understood and agreed that this agreement shall not in any respect make the second party the agent of the first party to transact any business in its name or for it in any form, nor in its name, nor upon its behalf to make any promises or representations in respect to the products give the second party the right to sell the first party's products in the territory hereinafter specified as an independent contractor.

"THE FIRST PARTY agrees to sell to the second party, pools and equipment in East Baton Rouge Counties.

"THE SECOND PARTY agrees to pay a deposit of $600, $100 credit to be given on the order of each pool until the $600 is used, during the term of this contract only.

"THE QUOTA OF SIX POOLS is set for the first year period. This agreement will be renewed automatically for a second year if this quota is met to the satisfaction of the first party.

"LANCER POOLS CORPORATION reserves the right to cancel this agreement if the above conditions are not met, and it is hereby understood that the second party will forfeit his deposit, or any unused portion thereof; with no further liability to the second party."

2. Complainant contends that there were certain oral agreements, in addition to the written agreement filed in evidence, between the representative of Lancer Pools Corporation and her, relative to the exclusive character of the territory covered by her franchise agreement. However, there was no proof of any kind, other than the statement of complainant herself, which would in any way tend to prove such oral agreements, and the Court finds, as a matter of fact, that the entire agreement between the parties is contained in the written franchise agreement filed in evidence during

the trial of this case, and quoted from hereinabove.

3. As early as March of 1959, complainant was well aware of the fact that Lancer Pools Corporation had entered into other contracts, similar to hers, granting to others the right to sell Lancer Lifetime Swimming Pools in the Parish of East Baton Rouge, Louisiana, and that hence she was not, in fact, considered by Lancer Pools Corporation as an "exclusive" dealer.

4. As of August 1, 1959, or almost one year after the execution of this franchise agreement, complainant had not purchased any swimming pools whatsoever from respondents, and this failure to purchase any pools, as per the provisions of the franchise agreement, prompted Lancer Pools Corporation to send a letter to complainant wherein they reminded her of her failure to purchase any swimming pools during the term of the franchise agreement, and pointed out to her the possibility of this franchise agreement being terminated without renewal. In lieu of such termination, Lancer Pools Corporation then, by this letter, offered to complainant:

"* * * An extension of your franchise agreement for four months from the date of termination which will permit you to remain a non-exclusive 'A' dealer in the area your franchise agreement presently encompasses, without the need of your payment of additional deposits. This will enable you to apply your original deposit on all future pool shell orders.

"If you would prefer an extension of your franchise agreement, in accordance with the terms and conditions set forth above, rather than a complete termination at the expiration date of said franchise agreement, then will you kindly express your acceptance thereof by returning duplicate of this letter to this office within five business days from receipt of same."

A representative of Lancer Pools Corporation also, at that time, suggested to complainant that it would aid her in the sale of swimming pools if she had a Lancer Lifetime Swimming Pool installed on her own premises, and they offered to install one for her if she would pay Lancer Pools Corporation an additional sum of $688.75.

5. Complainant accepted this proposition for an extension of her franchise agreement by signing and returning to Lancer a copy of the letter, and she also accepted Lancer's offer to install a swimming pool on her premises by paying to Lancer, by check, the sum of $688.75.

6. Lancer Pools Corporation failed to furnish complainant with a swimming pool despite the fact that it, Lancer Pools Corporation, received and retained the $688.75 paid to it by complainant for that purpose.

7. There is no evidence whatsoever to support complainant's claim against the respondent, Lancer Industries, Inc. By complainant's own admissions, no negotiations or dealings of any kind were had between complainant and Lancer Industries, Inc., and no contract or agreements of any kind were entered into between complainant and Lancer Industries, Inc. There is absolutely no evidence of any kind in this record to support the contention that Lancer Industries, Inc. and Lancer Pools Corporation were, in fact, one and the same corporation.

8. Even though, in view of the Findings of Fact and Conclusions of Law of this Court, the question of damages for lost profits becomes moot, it must be noted in passing that it is the opinion of this Court that the complainant failed completely to prove by any substantial evidence whatsoever that she had incurred any actual damages by way of lost profits in her business as a result of the fact that she was not, in fact, an exclusive dealer for the sale or distribution of Lancer Lifetime Swimming Pools in the Baton Rouge area.

## CONCLUSIONS OF LAW

1. The Court's jurisdiction in this matter is founded upon the diversity provisions of 28 U.S.C.A. § 1332.

812

2. This matter involves a written contract entered into between complainant and Lancer Pools Corporation, and there being no substantial evidence of any oral agreements changing or altering the terms of the written contract in any way, said contract constitutes the law between these parties. LSA–Civil Code, Article 1945; Lama v. Manale, 218 La. 511, 50 So.2d 15, 23 A.L.R.2d 1312; Cantu v. Fenner, Beane, & Ungerleider, 181 La. 743, 160 So. 399.

3. The franchise agreement, constituting the contract between these parties, in part provides:

"Whereas, the second party is desirous of securing from the first party the right to the use of Lancer Lifetime Swimming Pools in connection with the sale of such merchandise in the premises of the second party as aforesaid, and in the exclusive territory as hereinafter mentioned * * *.

"The first party agrees to sell to the second party pools and equipment in East Baton Rouge Counties."

The mention, in these provisions of the franchise agreement, of the territory involved, clearly indicates that the purpose of referring to a specific territory was to restrict the territory in which complainant could sell, rather than to make her an exclusive dealer in that territory. In other words, it seems quite clear that the purpose of these provisions in the agreement is to restrict the area within which complainant could sell Lancer Lifetime Swimming Pools, without in any way limiting the respondent in the number of dealers or distributors that they might franchise within that same territory. The first paragraph above quoted merely states that the second party, the complainant, is desirous of securing the right to use and sell Lancer Lifetime Swimming Pools within a cerain territory, and no other. The second quoted provision obligates the first party, Lancer Pools Corporation, to sell Lancer Lifetime Swimming Pools to the complainant in the Parish (County) of East Baton Rouge only. Thus, the restriction is clearly on the complainant rather than on the respondent. This Court therefore holds that the franchise agreement dated August 11, 1958, did not grant an exclusive franchise to the complainant, but merely granted the right to complainant to sell Lancer Lifetime Swimming Pools only in the territory of East Baton Rouge Parish (County). Therefore, for respondent Lancer Pools Corporation, to also franchise other dealers or distributors in the same territory, did not constitute a violation of the franchise agreement.

4. Complainant, by failing to purchase the required number of swimming pools within the time agreed upon, under the clear and unambiguous terms of the agreement, forfeited the $600 initially deposited by her with Lancer Pools Corporation.

5. On the other hand, the evidence clearly shows that respondent, Lancer Pools Corporation, violated its oral contract with the complainant whereby, for an additional payment of $688.75, which payment complainant did in fact make to Lancer Pools Corporation, it, Lancer, agreed to install a swimming pool on complainant's premises. Since Lancer Pools Corporation failed to provide complainant with this swimming pool as per their agreement, it, Lancer Pools Corporation, is legally indebted to the complainant for the return of the $688.75 paid to it by complainant, and the complainant is therefore entitled to judgment as prayed for against Lancer Pools Corporation for the sum of $688.75, together with interest and costs as provided by law. Since no damages were claimed or proved by the complainant for this breach of oral contract by Lancer, none can be awarded.

6. Since there was no evidence of any kind that the respondent, Lancer Industries, Inc., was in any way a party to these agreements or transactions, complainant has completely failed to carry the burden of proving a case against that respondent, and hence, complainant's claim against Lancer Industries, Inc.

must be rejected and this suit dismissed insofar as that respondent is concerned.

7. Complainant's claim for attorney fees for the prosecution of this suit must be denied. It is the well-established law of Louisiana that attorney fees may not be awarded as an element of damages except where they are particularly authorized by statute or by contract. It is the general rule in Louisiana that in the absence of such a contract or statute, attorney fees are not recoverable as an element of damages. Loeblich v. Garnier, La.App., 113 So.2d 95; Lafleur v. Sylvester, La.App., 135 So.2d 91; Hamilton v. Goeders, La.App., 121 So.2d 859; Pisciotta v. Du Saules, La.App., 125 So.2d 181.

Counsel for plaintiff will prepare and present a judgment in accordance with these findings.