430 So.2d 220 (1983)
Syed Z. BABER
v.
William HOFFER a/k/a Bill Hoffer.
No. CA 0191.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1983.
*221 Tillery & Potts, A. Scott Tillery, Chalmette, for plaintiff-appellee.
Law Offices of Sidney D. Torres, III, Kenneth B. Krobert, Chalmette, for defendant-appellant.
Before REDMANN, GARRISON and CIACCIO, JJ.
GARRISON, Judge.
This is a suit to recover a down payment on the sale price in a contract to sell a business. From a district court judgment for the plaintiff, which we affirm, the defendant appeals.
In July, 1980, plaintiff Syed Baber and defendant William Hoffer entered into a "Lease Exchange Agreement,"[1] whereby Baber was to purchase Hoffer's Exxon Service Station for $83,000.00 to be paid as follows: $10,000.00 to be paid immediately, $30,000.00 on the date of the sale, and $43,000.00 to be paid in installments. The agreement recited certain conditions, including independent approval of Baber by Exxon Corporation and an agreement between the parties that Baber would provide "a cosigner with enough collateral to be responsible for the $43,000.00."
Baber made the $10,000.00 down payment and produced as his co-signer his nephew, Abdul Khan, an engineer who owns several pieces of immovable property located in Jefferson Parish. Deeds to these properties were delivered to Hoffer shortly after the Lease Exchange Agreement was signed. Hoffer then stated that he would require that a mortgage be given to secure the $43,000.00 and, because the property Khan owned in Jefferson Parish was already burdened and subject to certain mortgages, he rejected the proposed co-signer.
This triggered a dispute between the parties as to the interpretation of the clause requiring a co-signer. Hoffer refused to perform under the contract unless Baber provided the disputed mortgage. Baber, after being approved by Exxon, took over a different Exxon station. He later sued to recover the down payment made on the purchase of Hoffer's business, on the basis that Hoffer's actions constituted a breach of contract which entitled him to a full refund of the money paid, plus interest and damages.
In his reasons for judgment, the trial judge interpreted the disputed clause as not requiring the furnishing of a mortgage. He further found that plaintiff Baber had complied with the terms of the contract, and rendered judgment in favor of the plaintiff.
*222 Defendant has appealed the judgment of the district court, based on the following arguments.
Appellant alleges first that the trial court erred in holding that plaintiff produced a willing co-signer or surety with sufficient collateral to comply with the terms of the agreement. He argues that the co-signer, Khan, did not in fact possess sufficient property to enable him to assume the obligation upon plaintiff's default, and therefore did not meet one of the essential conditions of the contract regarding the co-signer.
Appellant further alleges that it was the intent and understanding of the parties that the term "enough collateral" encompassed the use of mortgages. He points out that although he constructed the wording of the contract, all parties were present during the negotiations which resulted in the agreement, and plaintiff should not now be allowed to deny that his understanding of the agreement, specifically, the meaning of collateral in relation to the proposed surety, meant and included mortgage.
Appellant concludes that plaintiff breached the lease exchange agreement, which was "binding and irrevocable" for four months, when he discontinued his efforts to provide a co-signer with sufficient collateral and received approval as lessee dealer of another Exxon station. He contends that Baber frustrated the performance of the contract by unilaterally withdrawing from the agreement, and cannot, therefore, be allowed to argue that the contract is unenforceable.
The disputed clause in the contract reads as follows:
"Syed Z. Baber agrees to have a co-signer with sufficient collateral to be responsible for the FORTY-THREE THOUSAND DOLLARS ($43,000.00), after Exxon approves his application."
The testimony of both parties reflects that they intended that the "co-signer" required by the agreement was to function as a surety as defined by La.C.C. Art. 3035:
"Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not."
The trial court was correct, therefore, in applying La.C.C. Art. 3041:
"Suretyship does not operate a mortgage on the property of the surety unless there has been an express agreement." (Emphasis supplied)
The jurisprudence of this state has also consistently declared that no mortgage exists unless expressly stipulated, nor can a mortgage be implied. N.O. Banking Co. v. Hagan, 1 La.Ann. 62 (1846); State v. St. Julien, 140 La. 258, 72 So. 956 (1916); Durel v. Buchanan, 147 La. 804, 86 So. 189 (1920). The disputed provision of the contract between Baber and Hoffer clearly contains no express agreement that the surety mortgage his property.
Moreover, the law and the jurisprudence provide that although the courts are bound to give legal effect to contracts according to the true intent of the parties to the contract, that intent must be determined "by the words of the contract, when these are clear and explicit and lead to no absurd consequences." La.C.C. Art. 1945. When a clause of a contract is clear and unambiguous, the letter of it should not be disregarded under the pretext of pursuing the spirit. Maloney v. Oak Builders, 235 So.2d 386 (La.1970); Lama v. Manale, 218 La. 511, 50 So.2d 15 (La.1950).
We find no ambiguity in the words of the agreement, which was drafted by appellant. Plaintiff provided a willing cosigner, or surety, who agreed to be responsible if plaintiff defaulted on the obligation. The testimony is undisputed that the surety, Mr. Khan, was employed by Texaco Corporation at a salary of over $30,000.00 a year, and owned three pieces of property valued at $110,000.00 to $120,000.00. Although the record does not reflect the amount of Mr. Khan's indebtedness on the mortgages on these properties, Hoffer's attorneys apparently found Kahn's equity in the property sufficient to cover the balance *223 of the sales price, but then insisted on his executing a mortgage on the property in favor of Hoffer. We are unable to find, based on the evidence, that the trial court erred in determining that Mr. Khan had sufficient collateral to act as surety.
We conclude that plaintiff's failure to produce a surety who would mortgage his property to defendant did not operate as a breach of the agreement between the parties, because the agreement did not expressly provide for the furnishing of a mortgage.
Accordingly, because we find that plaintiff complied with the terms of the contract, we affirm the judgment of the trial court in favor of the plaintiff for the amount deposited with the defendant, plus interest and costs. Costs of this appeal are to be paid by the defendant.
AFFIRMED.
NOTES
[1] This agreement, a two-page document, was drafted by Hoffer, typed by his wife and signed by the parties on July 6, 1980.