BYRNES, Judge.
Equitable Life Assurance Society of the United States (“Equitable”), appeals a judgment dismissing their Petition for Possession of Premises and Eviction brought against defendants, Herman and Miriam Watsky, d/b/a The Galleria Shoe Boutique. We affirm.
Herman and Miriam Watsky are owners of the Galleria Shoe Boutique and tenants in the Uptown Square Shopping Center, which is owned by appellant. The original contract of lease between these parties was drafted on July 8, 1977 and amended on July 29,1977. It commenced on November 1, 1977 and ran for a period of ten years. The parties on October 26, 1987 entered into a Lease Extension and Modification Agreement which extended the lease one year, beginning on November 1, 1987.
*29 On February 12, 1988, Equitable filed a Petition for Possession of Premises and Eviction, and Rule to Show Cause contending the lease as amended on October 26, 1987 provides that the Watskys are obligated to pay a monthly charge for chilled water service in the amount of $135.00. They asserted that, despite amicable demand having been made, the Watskys failed to pay the monthly charge for chilled water service for the months of November and December, 1987, and January, 1988. Equitable allegedly exercised its default option pursuant to the provisions of the lease and cancelled the lease effective January 22, 1988. The Watskys have refused to vacate the leased premises.
The issue before this court is whether the lease agreement, as amended on October 26, 1987, required the lessees to pay, in addition to other consideration, a monthly fee for chilled water of $135.00.
Pursuant to the lease agreement of July 29, 1977 the Watskys agreed to pay the following as consideration: rent, common area costs, taxes, advertising and promotional services, and chilled water costs. Throughout the ten year period, the Wat-skys paid all fees pursuant to the lease agreement, including the $135.00 monthly fee for chilled water.
The Lease Extension and Modification Agreement of October 26, 1977 provided in pertinent part: “Commencing on November 1, 1987, and for the remainder of the extended lease term, Tenant shall pay the following rent and charges (instead of those stipulated in the lease agreement dated July 29, 1977)”. This language was followed by a list consisting of the following: minimum rent, percentage rent, common area maintenance, real estate taxes, merchant’s association, and domestic water. Chilled water was not included in the list. The parties further agreed that:
6. All other terms, conditions and covenants of the Lease dated July 29, 1977, not otherwise modified herein, are hereby reaffirmed by the parties and shall remain in full force and effect during the remainder of the lease term as extended herein.
Equitable contends the parties did not intend to eliminate the charge for chilled water upon execution of the Lease Extension and Modification Agreement. They argue further that the Lease Extension and Modification Agreement did not modify the provision for payment of chilled water charges, and pursuant to the terms of paragraph 6 of that document, the charge for chilled water service remains in full force and effect. They contend that any other interpretation would lead to absurd consequences in light of in paragraph 4 of the Lease Modification which provides in part:
4. If D.H. Holmes closes, Tenant shall pay only six (6%) percent of gross sales payable monthly in arrears, together with charges (common area maintenance, real estate taxes, Merchant’s Association, chilled water, domestic water and electricity) instead of fixed minimum rent....
Finally, Equitable asserts that, because all of the evidence before the trial court was in written form, the proper standard of appellate review is sufficiency and preponderance of the evidence rather than the manifest error rule.
We reject appellant’s arguments. In Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987), our Supreme Court held that the manifest error standard of appellate review applies when the record consists solely of written reports and depositions as well as when there is live testimony. See also, Pogo Producing v. United Gas Pipe Line, 511 So.2d 809 (La.App. 4th Cir.1987); Webster v. Terrebonne Parish Council, 515 So.2d 461 (La.App. 1st Cir.1987); Allen v. Louisiana-Pacific Corp., 512 So.2d 556 (La.App. 3rd Cir.1987). In that case, the Supreme Court reiterated its holding in Carter v. Koehring Co., 283 So.2d 716 (La.1973) by stating:
Louisiana’s three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as well as the trial court’s normal procedure of evaluating live witnesses), great deference is accorded to the trial court’s factural findings, both express and implicit, and reasonable eval *30 uations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court’s judgment.
Thus, we now review the evidence which was before the trial court to determine whether its findings of fact were manifestly erroneous.
The law and jurisprudence provide that where the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent. LSA-C.C. Art. 2046; Cashio v. Shoriak, 481 So.2d 1013 (La.1986); Maloney v. Oak Builders, 256 La. 85, 235 So.2d 386 (1970); Baber v. Hoffer, 430 So.2d 220 (La.App. 4th Cir.1983).
We find no ambiguity in the words of this agreement. The language adopted October 26, 1987 set forth the rent and charges to be paid by the tenant. No mention was made of a chilled water charge although such a charge had been delineated in the two previous agreements. By the clear terms of the contract which stated: “... Tenant shall pay the following rent and charges (iinstead of those stipulated in the Lease agreement dated July 29, 1977) ...” (emphasis added), the parties eliminated the chilled water charge.
This interpretation does not lead to absurd consequences in light of Paragraph 4 of that document. Paragraph 4 is operative only if D.H. Holmes closes its store at the Uptown Square Shopping Center. In that event, the consideration to be paid by the tenant would change. One of those changes would be the imposition of an additional charge for chilled water. In this respect, the language is clear and concise and the results are not absurd.
We, therefore, find no manifest error in the trial court’s finding that the October 26, 1987 agreement does not include a charge for chilled water.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellant, Equitable Life Assurance Society of the United States.
AFFIRMED.
CIACCIO, J., dissents with reasons.